## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1)   GULFPORT ENERGY CORPORATION,<br>a foreign corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. CIV-16-1091-W |
| (1)   IRONSHORE SPECIALTY INSURANCE<br>COMPANY, a foreign corporation, | ) ) ) | |
| Defendant. | ) | |

## COMPLAINT

COMES NOW Plaintiff, Gulfport Energy Corporation ("Gulfport" or "Plaintiff"), a foreign corporation, by and through its counsel HARTZOG CONGER CASON & NEVILLE, LLP, and brings claims for breach of contract, breach of the duty of good faith and fair dealing, fraud, declaratory judgment, and other relief against Defendant Ironshore Specialty Insurance Company ("Ironshore" or "Defendant"), a foreign corporation, arising out of Ironshore's failure to honor its obligations under a pollution liability insurance policy that Ironshore sold to Gulfport. In support whereof, Plaintiff alleges and states as follows:

## PARTIES

1.      Plaintiff is a Delaware corporation with its principal place of business in Oklahoma City, Oklahoma.

2.      Defendant is an Arizona corporation with its principal place of business in New York, New York.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(a) because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4.      This court has personal jurisdiction over Defendant because it is an approved surplus lines company with the Oklahoma Insurance Department, it does business in Oklahoma including the issuance of insurance policies to Oklahoma insureds, and it processes claims in Oklahoma and involving Oklahoma insureds.  Defendant has sufficient minimum contacts with Oklahoma to give rise to personal jurisdiction in this state.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendant is subject to this Court's personal jurisdiction and is therefore deemed to reside in this judicial district.  Defendant's operations as an insurer with respect to entities located in the counties comprising the Western District of Oklahoma provides sufficient contacts within this district to subject it to venue in this Court pursuant to 28 U.S.C. § 1391(d).  Additionally, in the relevant insurance policy, Defendant consented to the "jurisdiction of a court of competent jurisdiction within the United States."  Exhibit 1, Site Pollution Incident Legal Liability Select (SPILLS) Policy § 7(Q).

## STATEMENT OF FACTS

6.      Gulfport is an Oklahoma City-based independent oil and natural gas exploration and production company.  At all times relevant to this Complaint, Gulfport had producing properties in the Utica Shale of Eastern Ohio.

7.      On or about March 30, 2014, Ironshore sold to Gulfport Site Pollution Incident Legal Liability Select (SPILLS) Policy, Policy No. 001970200 (the "SPILLS Policy"). *See* Ex. 1.

8.      On or about September 25, 2014, a release of approximately 100 barrels of natural gas condensate occurred on land leased by Gulfport in Freeport, Ohio ("Release").   The Release took place over a period of days.   Gulfport engaged in immediate and extensive cleanup efforts under the observation and direction of the Ohio Department of Natural Resources.

9.      On October 31, 2014, Gulfport provided notice of the Release via its broker to Ironshore.  The notice was accompanied by an "accord form" stating that there had been a release of natural gas condensate at the Freeport, Ohio location due to the separation of an underground line.

10.      On or about November 5, 2014, Gulfport's broker asked Ironshore for the identity of the adjuster assigned to Gulfport's claim.

11.      On or about December 8, 2014, Gulfport's broker informed Ironshore that Gulfport's previously-noticed claim "will exceed the policy deductible would you please assign to an adjuster and contact insured[.]"

12.      First Mercury, another insurer of Gulfport, was also provided notice of the Release via the "accord form" and acknowledged receipt of the same, including all details stated in paragraph 8 above, in correspondence dated May 6, 2015.

13.      Ironshore did not respond to Gulfport's claim for several months and took no steps to investigate or otherwise assert its rights or perform its duties under the

SPILLS Policy.

14.     In March 2015, Gulfport considered switching carriers for its gradual pollution coverage but, at the urging of its broker, decided to renew its SPILLS Policy with Ironshore on March 27, 2015.  Gulfport's broker praised Gulfport's choice of Ironshore, representing to Gulfport that Ironshore would be covering Gulfport's claim arising out of the Release.  Gulfport chose to renew its policy with Ironshore in the belief that Ironshore was paying Gulfport's claim.  Ironshore knew that Gulfport elected to renew on March 27, 2015 based on Gulfport's belief that Ironshore was paying Gulfport's claim.  By March 27, 2015, Ironshore had already decided not to pay a significant portion of Gulfport's claim but intentionally concealed this information from Gulfport and its broker until after Gulfport renewed its policy with Ironshore.

15.     In correspondence dated March 27, 2015, the same day Gulfport renewed the SPILLS Policy, Ironshore denied coverage for all remediation and clean-up costs incurred by Gulfport prior to December 8, 2014.  Ironshore's letter acknowledged "we previously have been given notice of the referenced incident" and admitted "a coverage obligation with respect to this incident and Gulfport's response to same[.]"  In spite of this, the letter disclaimed coverage on the grounds that Ironshore interpreted the SPILLS Policy to limit Gulfport's coverage to remediation and clean-up expenses approved by Ironshore before they were incurred by Gulfport.  Ironshore also stated its position that Gulfport's notice of the Release was provided later than the SPILLS Policy allowed.

16.     In correspondence dated January 7, 2016, from Ironshore to Gulfport, Ironshore reaffirmed its denial of Gulfport's claim for losses incurred prior to December

4

8, 2014, but stated, "to be clear, Ironshore has not disclaimed coverage for costs incurred after December 8, 2014."  In spite of Ironshore's admission of responsibility for post-December 8, 2014 costs incurred by Gulfport, Ironshore has not paid Gulfport for any of its losses for over seventeen months.  The January 7, 2016 correspondence also stated, "Ironshore does not really take issue with the length of Gulfport's delay in giving notice, *per se*."  Nonetheless, Ironshore against stated its belief that the SPILLS Policy did not require Ironshore to cover remediation and clean-up expenses incurred by Gulfport that were not pre-approved by Ironshore.

17.    In correspondence dated April 27, 2016, from Gulfport to Ironshore, Gulfport explained to Ironshore that even if Ironshore's position regarding pre-approval was correct, a point Gulfport did not and does not concede, Ironshore's correspondence with Gulfport had stated Ironshore's acknowledgement that exceptions to pre-approval applied for emergency response expenses and expenses required by environmental law. Gulfport enclosed an affidavit from Jace Marshall, on behalf of Gulfport, explaining how Gulfport's remediation and clean-up expenses incurred were required by Ohio law and therefore fell within the exception that Ironshore admitted to exist under the SPILLS Policy.

18.    Also in its April 27, 2016 correspondence, Gulfport furnished extensive invoices and other documentation of its losses to Ironshore in an effort to expedite Ironshore's payment of its admitted responsibility for Gulfport's post-December 8, 2014 losses.

19.    In correspondence dated June 21, 2016, from Ironshore to Gulfport,

5

Ironshore promised its review of information provided by Gulfport "will be completed soon and we will advise you upon its completion." To date, no further response has been received from Ironshore and no payment has been made by Ironshore to Gulfport.

20.     The June 21, 2016 correspondence also stated, "Ironshore has never disputed that Gulfport was required by environmental law to undertake remedial efforts." Ironshore nonetheless claimed that Ohio law did not require immediate remediation and clean-up of the Release and reaffirmed again its position that the SPILLS Policy required Gulfport to "consult with Ironshore before undertaking [remediation] efforts[,]" a requirement not found in the SPILLS Policy.

21.     The total remediation and clean-up expenses incurred by Gulfport and for which Ironshore has refused to pay Gulfport are in excess of $3,000,000.00.

<u>**COUNT I:  BREACH OF CONTRACT**</u>

22.     Gulfport incorporates by reference the facts pleaded in paragraphs 1-21 herein.

23.     The SPILLS Policy is a valid and binding contract between Gulfport and Ironshore.

24.     Ironshore has acknowledged certain of its obligations under the SPILLS Policy, including the duty to pay Gulfport's claim with respect to Gulfport's post-December 8, 2014 losses, but has refused to perform the acknowledged obligations.

25.     Ironshore has disclaimed and refused to perform other obligations under the SPILLS Policy including the duty to investigate and process Gulfport's claim, the duty to act promptly and diligently, and the duty to pay Gulfport's claim with respect to

6

Gulfport's pre-December 8, 2014 losses.

26.     Gulfport has satisfied all obligations owing under the SPILLS Policy and has complied with all conditions necessary for coverage under the SPILLS Policy, including, but not limited to, paying all insurance premiums due Ironshore for the SPILLS Policy.

27.     As a result of Ironshore's disclaimer and refusal to perform its obligations under the SPILLS policy, particularly including but not limited to Ironshore's duty to pay Gulfport's claim, Gulfport has suffered actual and consequential damages in excess of $3,000,000.00 and other damages and is entitled to recover the same.

## COUNT II:  BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

28.     Gulfport incorporates by reference the facts pleaded in paragraphs 1-26 herein.

29.     Every insurance contract in Oklahoma contains an implied duty of good faith and fair dealing, including the SPILLS Policy existing between Gulfport and Ironshore.

30.     Ironshore breached its duty of good faith and fair dealing by sitting on its hands for months after receiving notice of Gulfport's claim on October 31, 2041, refusing to investigate or otherwise assert its rights or perform its duties under the SPILLS Policy, refusing to process Gulfport's claim in a reasonably expeditious manner, and denying Gulfport's claim with respect to Gulfport's pre-December 8, 2014 losses in a manner inconsistent with the terms of the SPILLS Policy and inexcusable in light of Ironshore's deliberate inaction post-notice.

31.     As a result of Ironshore's breach of its duty of good faith and fair dealing,

Gulfport has suffered actual and consequential damages in excess of $3,000,000.00 and other damages and is entitled to recover the same.  In addition, Ironshore's breach of its duty of good faith and fair dealing was sufficiently reckless, malicious, and intentional as to entitle Gulfport to punitive damages.

## COUNT III:  FRAUD

32.    Gulfport incorporates by reference the facts pleaded in paragraphs 1-30 herein.

33.    Immediately prior to March 27, 2015, Ironshore knew that its SPILLS Policy with Gulfport was up for renewal and that Ironshore had decided to deny coverage under the SPILLS Policy.

34.    Ironshore also knew that if Gulfport was made aware of Ironshore's intention to deny coverage, Gulfport would not renew the SPILLS Policy.

35.    Ironshore concealed its intention to deny coverage from Gulfport until after Gulfport renewed the SPILLS Policy for another year, sending its denial of coverage letter the same day that Gulfport renewed its policy.

36.    During the renewal period, Ironshore represented to Gulfport through Gulfport's broker that it would pay Gulfport's claim under the SPILLS Policy.  Such representations were false.

37.    Ironshore made the representations and omissions stated herein for the purpose of inducing Gulfport to renew its SPILLS Policy with Ironshore.

38.    Gulfport, acting in reliance on Ironshore's representations and in ignorance of Ironshore's omissions decided to renew its SPILLS Policy with Ironshore.

39.     As a result of Ironshore's false representations and omissions, Gulfport has suffered actual and consequential damages in the amount of its renewal premium and other damages and is entitled to recover the same.   In addition, Ironshore's false representations and omission were sufficiently reckless, malicious, and intentional as to entitle Gulfport to punitive damages.

### COUNT IV:  DECLARATORY JUDGMENT

40.     Gulfport incorporates by reference the facts pleaded in paragraphs 1-38 herein.

41.     Ironshore has denied coverage to Gulfport for pre-December 8, 2014 remediation and clean-up expenses relating to the Release based on Ironshore's interpretation of the SPILLS Policy as not providing coverage for remediation and clean-up expenses that are not pre-approved by Ironshore.

42.     Ironshore has acknowledged that even unapproved remediation and clean-up expenses are covered under the SPILLS Policy if, at a minimum, they are emergency response expenses and/or expenses required by environmental law.

43.     Ironshore has acknowledged its duty to pay Gulfport's claim for post-December 8, 2014 remediation and clean-up expenses relating to the Release but has refused to make payment to date.

44.     Ironshore has refused to investigate or otherwise assert its rights or perform its duties under the SPILLS Policy and refused to process Gulfport's claim in a reasonably expeditious manner.  As a result of these acts and omissions by Ironshore, it has waived its right to deny or otherwise contest coverage for all remediation and clean-

up expenses relating to the Release.

45.     An actual controversy exists between Ironshore and Gulfport regarding the interpretation of the SPILLS Policy and the coverage of Gulfport's claim under the SPILLS Policy.

46.     Pursuant to 28 U.S.C. § 2201, Gulfport seeks a declaratory judgment from this Court that:  (a) Gulfport was not required by the SPILLS Policy to seek Ironshore's pre-approval of remediation and clean-up expenses relating to the Release; (b) the remediation and clean-up expenses relating to the Release were emergency response expenses and/or expenses required by environmental law; (c) Ironshore has a duty to pay Gulfport's claim both with respect to pre-December 8, 2014 remediation and clean-up expenses relating to the Release and with respect to post-December 8, 2014 remediation and clean-up expenses relating to the Release, as acknowledged by Ironshore; and (d) Ironshore has waived any right it might otherwise have to deny and/or contest coverage under the SPILLS Policy of the remediation and clean-up expenses relating to the Release.

WHEREFORE, premises considered, Plaintiff Gulfport Energy Corporation, respectfully requests that this court enter judgment against Defendant Ironshore Specialty Insurance Company as follows:

A.     For declaratory judgment that:  (a) Gulfport was not required by the SPILLS Policy to seek Ironshore's pre-approval of remediation and clean-up expenses relating to the Release; (b) the remediation and clean-up expenses relating to the Release were emergency response expenses and/or expenses required by environmental law; (c)

Ironshore has a duty to pay Gulfport's claim both with respect to pre-December 8, 2014 remediation and clean-up expenses relating to the Release and with respect to post-December 8, 2014 remediation and clean-up expenses relating to the Release, as acknowledged by Ironshore; and (d) Ironshore has waived any right it might otherwise have to deny and/or contest coverage under the SPILLS Policy of the remediation and clean-up expenses relating to the Release.

      B.     For actual, consequential, and other damages in an amount to be proven at trial but in excess of $75,000.00;

      C.     For pre- and post-judgment interest on such damages;

      D.     For costs and attorney fees;

      E.     For such other relief to which the Court determines Plaintiff is entitled.

Respectfully Submitted,

s// David A. Elder
David A. Elder, OBA # 20687
Matthew W. Brockman, OBA # 22077
Michael A. Furlong, OBA # 31063
HARTZOG CONGER CASON & NEVILLE
1600 Bank of Oklahoma Plaza
201 Robert S. Kerr Avenue
Oklahoma City, OK 73102
(405) 235-7000 | (405) 996-3403 (fax)
delder@hartzoglaw.com
mbrockman@hartzoglaw.com
mfurlong@hartzoglaw.com
**ATTORNEYS FOR PLAINTIFF**

**ATTORNEY LIEN CLAIMED**
**JURY TRIAL DEMANDED**